## Case No. 18,252.

### CHARGE TO GRAND JURY.

[2 Hughes, 518.] [1]

Circuit Court, D. West Virginia. Aug., 1870.

ELECTIONS AND VOTERS—CONSTITUTIONAL LAW—ENFORCEMENT ACT OF 1870.

[1. The act of May 31, 1870 (16 Stat. 140), to enforce the rights of citizens of the United States to vote in the several states of the Union, which provides, in section 1, that "all citizens of the United States, who are otherwise qualified to vote by the laws of the states in which they live, shall be entitled to and allowed to vote at all elections, without distinction of

[1] [Reprinted by permission.]

race, color, or previous condition of servitude," is not unconstitutional on the ground of discriminating between different classes of citizens. The words, "without distinction of race, color, or previous condition of servitude," are general terms, descriptive in character, and are not restricted, and do not limit the preceding words, which apply to all citizens otherwise qualified to vote.]

[2. Under section 2 of that act, which relates to registration of voters, any officer having charge of the registration of voters under the state laws, who "refuses or knowingly omits to give full effect to the law," by placing the name of any citizen on the list of voters, who applies for registration, and who is entitled under the state constitution and laws to be registered as a voter, is guilty of a misdemeanor, and is liable to a criminal prosecution, as well as to a civil action by the party aggrieved.]

JACKSON, District Judge (charging grand jury). Congress at its last session passed an act, the title of which is "to enforce the right of citizens of the United States to vote in the several states of this Union, and for other purposes." Under the ninth section of the law, the circuit courts of the United States, "with a view to afford reasonable protection to all persons in their constitutional right to vote, without distinction of race, color, or previous condition of servitude," and for "the prompt discharge of the duties of this act," are required "from time to time to increase the number of commissioners, so as to afford a speedy and convenient means for the arrest and examination of persons charged with a violation of this (the) act." During the late term of the circuit court, upon application made to it, some additional commissioners were appointed under the act for the purposes specified in it. Information has reached this court that, under and by virtue of its provisions, several persons have been arrested charged with a violation of it, and, after examination by the commissioners, have been held to answer indictments to be preferred against them at this term of the court. It therefore becomes your duty to investigate the charges preferred against the parties who are recognized to answer, and at the same time it is my duty to expound the law under which you are to act. This act, from its supposed political importance, has, as I am aware, been the subject of considerable discussion, and, as is usual under such circumstances, various interpretations have been placed upon it. It is to be regretted that a public law which was so likely to receive judicial construction and interpretation as the one under consideration, should become the subject of heated partisan discussion before it had received the calm and deliberate consideration of the judicial mind, to which we must always look for the proper legal interpretation and construction of the law. It has been suggested that some of the sections of this law are unconstitutional, for the reason, as it is supposed, that they make a discrimination in favor of one class of our citizens, affording protection to them alone. In the view that I take of this act, I think no such discrimination has been made in favor of any class, and I am inclined, without entering upon a full discussion of the objections raised to some of its provisions at this time, to maintain its validity, and shall therefore proceed to give you the views of the court in relation to it.

It is a general principle quite familiar to the legal profession that, in giving construction to a public statute, it is the duty of the court to ascertain the meaning and intention of its framers from the words employed and the matter to which it relates, and so to construe and interpret it as to give effect to all the words used when not inconsistent with the object expressed. And while this principle of law is unquestioned, it is equally true that, when the intent of a statute is plain, nothing is left to construction, and it is the duty of the court to interpret it according to its positive and explicit provisions. Testing this act of congress by the principles just stated, let us ascertain, if possible, what was the design and intention of

·congress in its adoption. From an examination of its various sections, it is evident that its framers had primarily three objects in view: First, to promote the public good by preserving the rights of the citizens, in requiring all citizens, whether officers of the law or not, to respect the rights of each and every person in the enjoyment and exercise of the right of suffrage, "without distinction of race, color, or previous condition of servitude." Second; to prevent evil-disposed persons from unlawfully interfering or intimidating the officers of the law in the discharge of their official duties in protecting the integrity and purity of elections. Third, to prevent any one from holding office under the government who is disqualified by reason of the fourteenth amendment to the ·constitution. That the act was framed for more than one purpose is evident from the title itself, which is to "enforce the right of citizens to vote," as well as "for other purposes."

At this time it is only necessary to consider the act so far as applicable to the first two objects named. And here it becomes a pertinent inquiry to ascertain who is entitled under this act to exercise the right of suffrage, or, in the language of the act, who is "qualified by law to vote at any election by the people in this state?" An answer to this question necessarily involves the consideration of the first section, and, as preliminary to it, I assume ·that all persons born or naturalized in the United States, and subject to its jurisdiction, are citizens of the United States and of the state wherein they reside, whether white or colored. The first section declares in plain terms "that all citizens of the United States, who are otherwise qualified to vote by the laws of the state in which they live, shall be entitled to and allowed to vote at all elections, without distinction of race, color, or previous condition of servitude." This section provides who shall exercise the right of suffrage, imposing no limitation upon the laws of the state. except that no citizen shall be disfranchised on account of "race, color, or previous condition of servitude." The words, "without distinction of race, color, or previous condition of servitude," are general terms, descriptive in their character, and are not restrictive, and do not limit the preceding words, "all citizens of the United States who are or shall be otherwise qualified to vote in any election by the people in any state." The language employed is plain, and affirms "that all citizens otherwise qualified to vote" shall not be denied the right for the reason just assigned. Whilst the primary object of this section seems to be intended to destroy all distinction between white and colored citizens. so far as the ballot is concerned, by placing them on the same equality in the exercise of the right of suffrage, yet it also in substance declares that "all citizens," who are by the laws of the state qualified to vote, shall exercise that right, but that none of them shall be prevented from the exercise of it by reason of race. color, or previous condition of servitude. It follows. therefore. that "all citizens" who are entitled to vote under the constitution and laws of the state are "protected in the exercise of· the right of suffrage under this section of the law." Whilst the first section declares who shall use the ballot, the second is intended to protect the voter in the exercise of that right, by securing to "all citizens," whether white or colored. who, by the terms of the first section, are entitled to vote, a fair and impartial registration, when registration is a "prerequisite or qualification for voting." It declares that where "any act is or shall be required to be done as a prerequisite or qualification for voting by the constitution and laws of any state," the persons or officers who are charged with the performance of (such) duties in furnishing to citizens "an opportunity to perform such prerequisite or to become qualified to vote," shall give to "all citizens of the United States" the same and

equal opportunity to perform such prerequisite, and to become qualified to vote, and that no citizen shall be denied "the same and equal opportunity to perform such prerequisite, and to become qualified to vote" because "of race, color, or previous condition of servitude." The language here employed is positive and explicit, and I see no occasion to resort to any legal rules to aid the court in giving the interpretation of or construction to this section. The object of this section is evident, and clearly means that any officer having charge of the registration of voters under the laws of the state, who "refuses or knowingly omits to give full effect to the law," by placing the name of any citizen on the list of voters who applies for registration, and is entitled under the constitution and laws of the state to be registered as a voter, is guilty of a misdemeanor, and is liable to a criminal prosecution as well as to a civil action to the party aggrieved. The last clause of the fourteenth amendment to the constitution of the United States provides that no one shall be denied the equal protection of the law. In framing this act congress must have had this provision of the constitution in view. It cannot be supposed that it would escape their attention. It must therefore be conceded that all citizens are under the fundamental law of the land entitled to equal privileges, and the equal protection of the law. The latter right is embraced by the very words of the amendment. It is incredible to suppose that congress intended by the passage of this act to do so vain a ·thing as to enact a law purely for the benefit of one class of citizens, to the manifest neglect and prejudice of ·mother, thus attempting by legislation to deprive them of the equal privileges and the equal protection of the law, as guaranteed by the fourteenth amendment. If such is its true construction, it would be clearly in conflict with this amendment to the constitution of the United States.

If I am right in the view I have just presented, it follows that no doubt can exist in the minds of any one as to the proper construction of the first and second sections, and that they were not intended, and do not discriminate in favor of any class of citizens. No right protected by our common constitution is held more sacred and dear to the citizen than the right of suffrage, and it cannot be supposed that congress. in enacting a law for the protection of the rights of those who were enfranchised by the fifteenth amendment, would at the same time so frame the law as to secure protection alone to that class of citizens, leaving nine-tenths of the population of the entire country unprotected by its provisions. The third section makes provision for the exercise of the right of suffrage where any citizen has by reason of the wrongful act or omission of the persons or officers charged with the duty of receiving or permitting the performance or the offer to perform any act, which by the laws of the state is required to be done as a prerequisite to qualify or entitle such citizen to vote, by declaring that "the offer of any citizen to perform the act required to be done by the constitution and laws of the state as a prerequisite to qualify or entitle him to vote, being otherwise qualified to vote, shall be deemed and held in law as a performance of such act, and entitle him to vote in the same manner and to the same extent as if he had in fact performed such act. by requiring the officer holding the election to receive and give effect to the vote of such citizen upon the presentation by him of his affidavit, stating the time and place of the offer to perform the required act, and the name of the officer who wrongfully prevented him from performing the necessary prerequisite to vote." It will be perceived that the object of this section is not only to give relief to the voter who is wrongfully deprived of his right to register. when registration is a prerequisite and a qualification to vot-

ing, by providing a mode of voting in such cases, but to furnish a remedy against the exercise of arbitrary power upon the part of the persons and officers who have charge of and conduct the elections. Under this section it is clearly the duty of all persons and officers who have charge of the registration of voters, to permit every person who can comply with the laws of the state, where they propose to vote, to register, and if they omit or refuse any citizen who applies for registration, and can comply with the laws of the state regulating the same, then it is the duty of the officer holding the election, upon such citizen presenting himself at the polls with an affidavit of the facts, to receive his vote. This section, unlike the two preceding sections, which inhibit a discrimination against the colored citizen on account of race, color, or previous condition of servitude, makes no exception or qualification whatever. It must, however, be construed in connection with them, "in pari materia," and by this means we ascertain beyond all question what is the meaning of the preceding sections, and when so ascertained it must govern the construction of them. Adopting this rule of construction, the third section clearly qualifies the two first sections, and indicates their meaning by declaring "that all persons who offer to perform or do perform the necessary prerequisite to qualify or entitle them to exercise the right of suffrage shall vote, upon presenting themselves with the affidavit required by the law." Its provisions are mandatory, constituting those who offer to vote under it the sole judge of their right to do so, leaving the officers, who are ministerial, and in no wise judicial, the exercise of no discretion whatever. Being comprehensive in its terms, it embraces all classes of citizens, preserving alike the rights of all and furnishing a like remedy for all in assertion of their rights, by imposing severe penalties for an omission or refusal to comply with its provisions. The fourth, fifth, sixth, and seventh sections are in harmony with the preceding sections, furnishing additional safeguards and remedies to the citizen by punishing all "who oppose by any unlawful means his registration, or the exercise of the right of suffrage, or who band or conspire against him to prevent him from the exercise of all his rights and privileges granted or secured to him by the constitution and laws of the United States." I deem it unnecessary to call your attention at this time to any other provisions of this act, except to the nineteenth and twentieth sections, which have for their object, as I have heretofore indicated, the preservation of the integrity and purity of elections and the punishment of all unlawful interference with them, by securing a proper registration of voters as well as protecting the voter in freely exercising the right of suffrage at any election for representatives or delegates to the congress of the United States, which by the laws are to take place at the ensuing election. The nineteenth section secures to any qualified voter of the state the free exercise of the right of suffrage, and inhibits the commission of a number of offences, amongst which is illegal voting and the interference in any manner with any officer of said elections in the discharge of his duties. The twentieth section seems to be somewhat confused. I think, by some means, some two or three lines in relation to voting have been interpolated into it unnoticed, and which I do not regard as germain to its leading object. It is evident that the whole scope of this section was intended to be confined to the subject of registration. It provides for the punishment of any person who "shall knowingly personate and register or attempt to register in the name of another person, or who shall fraudulently register or attempt to register, or do any unlawful act to secure the same for himself or another person, or who shall prevent any person, by any unlawful means, from duly exercising the right of registration, or who

shall induce any officer of registration, by any unlawful means, knowingly and wilfully to register one not entitled to it, or knowingly and wilfully to refuse to register one entitled to it, or shall aid, counsel, or advise any voter or officer to do or omit any act," the commission or omission of which is inhibited by this section. A careful examination of the nineteenth section must satisfy every one that its main object is to protect every qualified voter in the exercise of the right of suffrage, whilst it is just as clear that the chief purpose of the twentieth section is to secure to all qualified voters the right of registration, as well as to punish fraudulent registration. It also secures protection to all officers of registration in the legal discharge of their duties by punishing all persons who unlawfully interfere in any manner with them. It is obvious that congress, by the passage of this act, intended to enter the states for the purpose of maintaining as near as possible the purity of elections, in securing to every qualified voter under the law of the state the right to register, when the same is a qualification to voting, as also the free exercise of the right of suffrage. This act does not repeal or interfere with the laws as they exist in the states, unless they are in conflict with its plain provisions, and then only so far as such conflict exists. It is remedial in its character, and is supposed to be in harmony with the laws of the state, intended, however, to furnish full and adequate protection to all qualified voters when the state laws are inadequate, by enforcing their right to vote. It is, therefore, the duty of all officers under it to enforce its provisions firmly, exercising, however, the greatest caution and prudence, inasmuch as they may be called on to deal with officers executing laws under the authority of the state.

They should be fully satisfied that the case of an applicant is meritorious, and not frivolous. Upon the hearing of any case, if they have any doubt as to the commission of an offence under the law, they should discharge the party. At the same time the state officers should remember that the constitution and laws of the United States are the supreme and paramount laws of the land, and they must be governed by them in the discharge of their duties under the laws of the state, whenever a conflict exists between them. I presume that most of the difficulties that have occurred with "registrars" acting under the laws of the state, arise from the fact that they suppose they are invested with the exercise of a discretion in the execution of them. It is not important to determine whether they are so invested with the exercise of such discretion, as the third section of this act, if such discretion exists under the state law, qualifies the state law by taking away from the officer acting under it all discretion affecting the rights of citizens in the exercise of the right of suffrage. It imposes severe penalties against any officer of election "whose duty it is to receive, correct, certify, register, report, or give effect to the vote of any citizen," for refusing or omitting to perform any one of the duties thus enumerated, if the citizen who proposes to exercise the right of suffrage shall have complied with the requirements of the law. In the discharge of my official duty to you on this occasion, I have directed your attention to the leading features of the law. In the examination and investigation of the cases that have been referred to you by the United States commissioners for your action, it is your imperative duty under the law to find presentments against all persons who have violated any of its provisions. Whilst it is your duty on the one hand to afford protection to every citizen in the free exercise of the right of suffrage, a right which American citizens hold so dear, and next to the protection of their lives and liberty they prize and value so highly, by enforcing the law against all persons who violate their rights under it, on the other hand it is equally your duty to protect all

officers in the lawful discharge and performance of their duties under the law, from any unlawful interference with them. Commissioners of the United States who are acting under this law in the proper discharge of their duties are entitled by the law to the fullest protection. They are invested with powers of a most plenary character. But whilst this is true, this court will expect them to confine themselves in their action under the law to its letter and spirit, and under no circumstance to exceed it, as it will be both its duty and pleasure to remove any commissioner for improper conduct in the discharge of his official duties.